On Motion to Dismiss Appeal.
MONROE, C. J.
Defendant was prosecuted under an ordinance of the police jury of the parish of Caddo, entitled “An ordinance for the suppression of the blind tiger and the enforcement of the prohibition law of the parish of Caddo.” After excepting to the jurisdiction of the district court, he moved to quash the bill of information, on the ground that the ordinance is illegal and unconstitutional, for various -reasons, which are fully set forth, and, his motion having been overruled, he took his bill of exception, after which he was convicted and sentenced, and he took his appeal. The state moves to dismiss the appeal, on the grounds that the offense with which the defendant is charged is not punishable by death or imprisonment at hard labor, and no fine exceeding $300 or imprisonment exceeding six months has actually been imposed upon him, that the ordinance under which he was convicted and sentenced has not been declared unconstitutional, and that all other matters brought up by the appeal involve questions of fact, and hence that tljis court is without jurisdiction of the appeal.
[1] It will be observed, however, that de^ fendant, by his motion to quash,, has put in contestation the constitutionality and legality of the ordinance under which he has been convicted, and article 85 of the Constitution declares that the appellate jurisdiction of this court shall extend—
“to all cases in which the constitutionality or legality of any tax, toll or impost whatever, or of any fine, forfeiture, or penalty imposed by a municipal corporation, shall be in contestation, whatever may be the amount thereof, and to all cases wherein an ordinance of a municipal corporation or a law of this state has been declared unconstitutional, and in such cases the appeal, on the lqw and the facts, shall be directly from the court in which the case originated to the Supreme Court, and to criminal cases on questions of law alone.”
And then follows a specification of the particular class of criminal cases, to which alone the jurisdiction is extended, and which does not include the ease here presented.
It is clear, from the foregoing, that if the fine and penalty, the constitutionality and le *871 gality of which defendant has put in contestation, have been imposed by a municipal corporation, this court is vested with jurisdiction of the appeal; but the contention of the prosecution is that a parish is not a municipal corporation, within the meaning of the language above italicized, which language, it is said, must be confined in its application to cities, towns, and villages.
[2] Chancellor Kent defined a “municipal corporation” to be:
“A public corporation, created by government for political purposes, and having subordinate and local powers of legislation; e. g\, a county, town, city,” etc. 2 Kent, Com. 275..
In Bouvier’s Law Dictionary (Ed. 1865) wé find:
“Municipal. Strictly, this word applies only to what belongs to a city. Among the Romans, cities were called municipia; those cities voluntarily joined the Roman republic, in relation to their sovereignty only, retaining their laws, their liberties, and their magistrates, who were thence called municipal magistrates. With us, this word has a more extensive meaning; for example, we call municipal laws, not the law of a city only, but the law of the state. 1 Bl. Com. ‘Municipal’ is used in contradistinction to ‘international’; thus, we say an offense against the law of nations is an international offense, but one committed against a particular state or separate community is a municipal offense.”
In. the same work (Ed. 1897) we find:
“Municipal Corporation. A public corporation, created by government for political purposes, and having subordinate and local powers of legislation; e. g., a county, town, city, etc. 2 Kent. 275; Ang. & A. Corp. 9, 29; Bald. 222. An incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government. Glover, Mun. Corp. 1. * * * There are territorial subdivisions, not incorporated, but which are, like municipal corporations, instrumentalities of local government for certain definite purposes. Such are, in some states, the counties, or towns, or school districts, where they are not incorporated. They are termed quasi corporations, which title see. They are not included in the phrase ‘counties or municipal corporations’ in a statute. [Eaton v. Supervisors of Manitowoc County] 44 Wis. 489.”
Then follows a dissertation upon the powers of public corporations, possessing charters, which are differentiated from quasi corporations, which have no charters.
Turning to another title in the same work, we find:
“Quasi Corporations. A term applied to those bodies, or municipal societies, which, though not vested with the general powers of corporations, are yet recognized, by statutes or immemorial usage, as persons, or aggregate corporations, with precise duties, which may be enforced, and privileges, which may be maintained, by suits at law. They may be considered quasi corporations, -with limited powers, coextensive with the duties imposed upon them by statute or usage, but restrained from a general use of the authority which belongs to those metaphysical persons, by the common law.”
“Among quasi corporations may be ranked counties, and also towns, townships,_ parishes, hundreds, and other political subdivisions which are established without an express charter of incorporation, commissioners of a county, most of the commissions instituted for public use, supervisors of highways, overseers or guardians of the poor, loan officers of a county, trustees of a school fund, trustees of the poor, school districts, trustees of schopls, judges of a court authorized to take bonds to themselves in their official capacity, and the like, who are invested with corporate powers, sub modo, and for a few specified purposes only. The Governor of a state has been held a quasi corporation sole. [Governor v. Allen] 8 Humph. 176. So has a trustee of a friendly society, in whom, by statute, property is vested, and by and against whom suits may be brought. See 1 B. & Aid. 157. So of a levee district, organized by statute to reclaim land from overflow. [Dean v. Davis] 51 Cal. 406. And fire departments, having by statute certain powers and duties which necessarily invest them with limited capacity to sue and be sued. [Clarissey v. Metropolitan Eire Dept.] 31 N. Y. Super. Ct. 224. It may be laid down as a general rule that where a body is created by statute, possessing powers and duties which involve, incidentally, a qualified capacity to sue and be sued, such body is to be considered a quasi corporation,” etc.
In Black’s Law Dictionary, the primary definition which, the author gives of “municipal corporations” is in the language of Chancellor Kent (adopted by Bouvier, supra).
In Commissioners of Laramie Co. v. Commissioners of Albany Co., 92 U. S. 307, 23 L. Ed. 552, it appeared that Albany and Carbon counties were created out of Laramie county, but that no provision was made with regard to the payment of the then debt of Laramie county, and the suit was brought to *873 recover from the new counties their just proportion of that debt. The opinion of the court begins, and reads in part, as follows, to wit:
“Counties, cities, and towns are municipal corporations, created by the authority of the Legislature; and they derive _ all their powers from the source of their creation, except where the Constitution of the state otherwise provides. Beyond doubt, they are, in general, made bodies politic and corporate, and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their own internal affairs, and to promote the general welfare of the municipality. * * Trusts of great moment, it must be admitted, are confided to such municipalities. * * * Corporations of the kind are properly denominated public corporations, for the reason that they are but parts of the machinery employed in carrying on the affairs of the state. * * * Such corporations are composed of all the inhabitants of the territory included in the political organization ; and the attribute of individuality is conferred on the entire mass of such residents. * * * Institutions of the kind, whether called counties or towns, are auxiliaries of the state in the important business of municipal rule. * * * ‘Civil and geographical division of the state into counties, townships, and cities,’ said Thompson, C. J., ‘had its origin in the convenience and necessities of the people; but this does not withdraw these municipal divisions from the supervision and control of the state in matters of internal government,’ ” etc.
The general definition given by Judge Dillon is as follows:
“Sec. 19. Municipal corporations are bodies politic and corporate, * * * established by law to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated. We may therefore define a municipal corporation to be the incorporation, by the authority of the government, of the inhabitants of a particular place or district, and authorizing them, in their corporate capacity, to exercise subordinate specified powers of legislation and regulation with respect to their local internal concerns.” Dillon on Mun. Corp. (3d Ed.) vol. 1, p. 19.
It is true that the learned author thereafter explains that there is a difference between municipal and other public corporations, and that, though all municipal corporations are public bodies, created for civil or political purposes, all civil, political, or public corporations are not, in the proper use of language^ municipal corporations, and that:
“The phrase ‘municipal corporations,’ in the contemplation of this treatise, has reference to incorporated villages, towns, and cities, with power of local administration, as distinguished from other public corporations, such as counties and quasi corporations.”
“The distinction between municipal corporations proper,” the author continues, “such as chartered towns and cities, or towns and cities voluntarily organized under general incorporating acts, such as exist in a number of the states, and involuntary quasi corporations, such as counties, has been very clearly drawn by the Supreme Court of Ohio.”
And a definition is quoted from Hamilton County v. Mighels, 7 ‘Ohio St. 109, to the effect that a municipal corporation proper is called into existence either at the direct solicitation or by the free consent of the persons composing it, and for their own local and private advantage and convenience, while counties are, at most, but—
“local organizations, which, for purposes of civil administration, are invested with a few functions characteristic .of corporate existence. * * * They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them.”
In Words and Phrases, under the title “Municipal Corporations,” we find (volume 5, p. 4620):
“A municipal corporation is a body corporate and politic, established by law to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district incorporated [citing many authorities]. * * * The term ‘municipal corporations’ includes counties. Glenn v. York County Com’rs, 6 S. C. (6 Rich.) 412, 418. * *. * The term ‘municipal corporation’ includes a county, under the general municipal law. People v. Carpenter, 52 N. Y. Supp. 781, 783, 31 App. Div. 603. * * * The term ‘municipal corporations,’ in the clause in the Alabama Constitution providing that private property shall not be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner, includes counties. * * * Const, art. 1, § 14, which provides that no right of way shall be appropriated to the use of any corporation, other than municipal, until full 'compensation therefor be first made, in money, etc., refers to *875 such corporations as are for the purpose of public government, and therefore includes counties. Pacific Coast Ry. Co. v. Porter, 15 Pac. 774, 775, 74 Cal. 261. * * * ”
• “The constitutional amendment empowering the Legislature to authorize municipal corporations to levy assessments for local improvements, without regard to the cash value of the property assessed, held to authorize 'such legislation with respect to counties. Dowlan v. County of Sibley, 31 N. W. 517, 518, 36 Minn. 430.” Id. p. 4624.
“The'word ‘municipal,’ as originally used, in its strictness applied to cities only; but the word has now a more extended meaning, and, when applied to corporations, the words ‘political,’ ‘municipal,’ and ‘public’ are used interchangeably. Curry v. District Tp. of Sioux City, 17 N. W. 193, 192, 62 Iowa, 102 (cited in Port of Portland, 27 Pac. 263, 264, 20 Or. 580, 13 L. R. A. 533).” ‘
It will be observed that Judge Dillon speaks of “involuntary quasi corporations, such as counties,” and that the Supreme Court of Ohio, whose definition he adopts, refers to counties as “but local organizations which * * * are vested with but few functions characteristic of corporate existence,” and which are “created by the sovereign power of the state, w * * without the particular solicitation, consent, or concurrent action of the people who inhabit them.” And what is thus said may be true, in a general sense, when considered with reference to conditions existing in other states, and which, at one time, existed in this state; but it does not accurately describe the conditions now existing and which have existed in Louisiana for the past 30 years and more. The Louisiana Constitution of 1812 mentions the existence of certain “counties”. into which the state was then divided, provides for their representation in the General- Assembly, and contains no other reference to them, and the succeeding Constitutions, up to that of 1879, were equally reticent upon that subject. The Constitution last mentioned, and those of 1898 and 1913, however, contain among others the following provisions (giving the numbers of the articles in the present Constitution!, to wit:
“Art. 277. The General Assembly may establish and organize new parishes, .which shall be bodies corporate, with such powers as may be prescribed by law. * * *
“Art. 278. All laws changing parish lines, or removing parish seats, shall, before taking effect, be submitted to the electors of the parish or parishes to be affected thereby, at a special election held for that purpose, and the lines, or parish seat, shall remain unchanged unless two-thirds of the qualified electors of the parish or parishes affected thereby vote in favor thereof at such election.
“Art. 279. Any parish may be dissolved and merged by the General Assembfy into a contiguous parish or parishes, two-thirds of the qualified electors of the parish proposed to be dissolved voting in favor thereof at an election held for that purpose: Provided, that the parish or parishes into which the dissolved parish proposes to become incorporated consents thereto by a majority of its qualified electors voting therefor.” ,
It will be seen, therefore, that in Louisiana parishes are not now “created by the sovereign power of the state, without the particular solicitation, consent, or concurrent action of the people who inhabit them,” but that, to the contrary, they can neither be established nor disestablished without such consent and concurrent action. On the other-hand, there is no special act of the General Assembly incorporating any city or town in the state that may not bé repealed by the General Assembly, with or without the consent of the inhabitants, and the same is true of Act No. 136 of 1898, under which many of our cities, towns, and villages enjoy their corporate existence, and from which they derive their powers. Moreover, as the Constitution and the grants contained in Act No. 136 of 1898 furnish the measure of the powers conferred upon the cities, towns, and villages established under their authority, so the Constitution and the various acts of the General Assembly conferring powers upon the police juries furnish the measure of those powers, and include all of the general powers essential to the administration of local government, such as the power to levy taxes, to provide for the general welfare, to maintain peace and order, to incur debt and issue *877 bonds (under certain circumstances and for certain purposes), to enact ordinances and provide penalties for their enforcement, and to do many other things that are specifically mentioned. Const. Arts. 59, 106, 174, 276, 277, 278, 279, 280, 281, 292, 293; R. S. § 2743 et seq.; Act No. 31 of 1880; Act No. 115 of 1S9S; Acts Nos. 66, 202, 221, of 1902; Acts Nos. 37, 204, 207, 315, of 1908; Acts Nos. 128, 151, 198, of 1910; Acts Nos. 81, 132 (incorporated as an amendment to the Constitution), 141, 145, 182, 219, 239, of 1912; Acts Nos. 11, 19, 135, 183, 192 (incorporated in the Constitution), 194 (incorporated in the Constitution), 197, 227, 296, 302, of 1914 (and probably many others).
The coupling, in the various Constitutions and statutes, of “parishes” with “municipal corporations,” by the conjunction “and,” no doubt, indicates that those terms were not regarded as interchangeable under all circumstances; but construing the provision in previous Constitutions, identical with that now under consideration, the court has apparently never for a moment doubted that they were intended to bear the same meaning, within the contemplation of that provision, and for some other purposes.
Thus, in Parker v. Scogin, 11 La. Ann. 629, the validity of an ordinance of the police jury of Caddo parish was challenged, upon the ground, among others, that a confession of judgment upon which it was based was not binding upon each individual taxpayer; but the court said:
“The nature of municipal corporations is such that they, of necessity, represent all the citizens of the territory or district submitted to their jurisdiction by classes, as well as collectively.”
And the idea that a parish was not to be regarded as a municipal corporation, in that connection, does not seem to have suggested itself, though the amount involved in the case was sufficient, of itself, to have conferred jurisdiction on the court.
In Parish of Lincoln v. Huey, 30 La. Ann. 1244, defendant, having resisted the payment of a parish license for a grogshop, was 'condemned, and appealed, first to the district court, and then to this court, where it was said:
“There was an appeal to the district court, which was properly dismissed, and this second appeal was taken direct from the parish court to this court. Our jurisdiction attaches by reason of the question involved — the legality of the tax — -without regard to the amount.”
In Parish of St. Landry ex rel. Fontenot v. Stout, 32 La. Ann. 1278, defendant appealed from a judgment condemning him to fine or imprisonment, under an ordinance of the police jury, and a motion was made to dismiss the appeal, upon the ground, apparently, that this court was without jurisdiction. But it was said:
“It is a case involving ‘the constitutionality or legality of a fine imposed by a municipal corporation,’ and is therefore appealable.”
In State and Police Jury v. Isabel, 40 La. Ann. 340, 4 South. 1, defendant, by demurrer, attacked an ordinance of the parish of Jefferson, under which he was prosecuted, and, his demurrer having been sustained, and the state and parish having appealed, he moved to dismiss the appeal, on the ground that the case was unappealable. The court said:
“This is untenable. . It is apparent from the above statement that the case involves a contestation as to the constitutionality or legality of a fine or penalty imposed by a municipal corporation. This authorizes an appeal to this court under article 81 of the Constitution.”
In State v. Miller, 41 La. Ann. 55, 7 South. 672, defendant appealed from a sentence of fine or imprisonment imposed under an ordinance of a police jury, and it was said by the court:
“The suggestion that we have no jurisdiction in such a case is without merit. It is undoubtedly a case ‘wherein the constitutionality or legality of a fine or penalty, imposed by a municipal corporation is in contestation,’ and of all such cases, without limitation, article 81 of the Constitution invests this court with jurisdiction.”
*879 In Howcott v. Smart, 125 La. 50, 51 South. 64, it was found that taxes levied by a police jury were challenged as illegal, and it was held that this court was vested with jurisdiction of the appeal. It appears, therefore, that counties (or, as in our case, parishes), even though they be quasi corporations, with no definite charters, are held by all the authorities to be, in some sense, if not strictly, technically, and for all purposes, municipal corporations; that they are so held by some courts for some purposes, and by other courts for other purposes, the matter depending upon the language and purpose of the law to be construed. It further appears that, in this instance, the language of the law, considering the context as well as the clause which is immediately applicable to the case, extends the appellate jurisdiction of this court to—
“all cases in which the constitutionality or legality of any tax, toll or impost whatever” (meaning any tax, toll, or impost levied by the state, no matter bow small the amount involved), “or in wbicb any fine, forfeiture, or XDeualty, imposed by a municipal corporation, whatever may be the amount thereof, shall be in contestation,” and to “all other cases” (regardless of tho amount involved and of all other considerations) “wherein an ordinance of a municipal corporation or a law of the state has been declared unconstitutional.”
The purpose of these provisions would therefore seem to have 'been, in the one case, to afford to the citizen an appeal to the court of last -resort as against an illegal or unauthorized tax or penalty, whether imposed directly by the state or under its authority, and to afford the same relief to the state as against attempts to defeat the collection of such taxes or penalties, when authorized and legal, and, in the other case, to afford that relief to the state in cases where inferior courts may nullify, as unconstitutional, its laws, enacted by the General Assembly or by its authorized agents; and, if that be the purpose, it would not be half accomplished, and much confusion would result, if this court should decline to entertain jurisdiction in a case in which the constitutionality or legality of a tax or penalty imposed by a parish (or police jury, acting for a parish) is in contestation, and yet exercise such jurisdiction in a similar case arising under an ordinance of a city, town, or village within such parish, since of the 1,800,000 people (approximately) now constituting the population of the state nearly two-thirds live under the immediate dominion of the parish ordinances, and of the total assessed values in the state a very large íxroportion, certainly, is similarly situated.
We have shown that Chancellor Kent and the Supreme Court of the United States, long since, defined a municipal corporation to he a “public corporation, created by the government for political purposes, and having subordinate local powers of legislation,” and that they included in the definition such political subdivisions as “counties,” though they were regarded as mere quasi corporations, without special charters, and with perhaps but feeble powers, and that lexicographers and text-writers are still making use of that definition; and we have also shown that a parish, under our system, is so well within the definition that it would be impossible to exclude it without doing violence to the plain meaning of plain English words. Why, then, may we not assume that the framers of our Constitutions have taken it for granted that the courts, in construing the language used by them, would accept the broader interpretation which had thus been given and accepted by others, rather than defeat the plain and reasonable purpose of that language by adopting an interpretation which, apparently, with a view of distinguishing the subject of particular treaties on corporation law, has narrowed the application of the term “municipal corporation” to a particular class of public corporations, though admittedly all such corporations, for some purposes, if not *881 for others, fall within the meaning of that term, and, more particularly, since, as we have seen, new parishes can be created in this state only by the consent of the inhabitants, and, when created, are constituted “bodies corporate,” thus eliminating the two main features which are said to distinguish “counties” from “municipal corporations proper.”
We find no sufficient answer to the question thus suggested, and, concluding to adhere to our jurisprudence as established, hold that the court is vested with jurisdiction of this appeal. The motion to dismiss is therefore denied.