STERMER v. THE BOARD OF COUNTY COMMISSIONERS OF LA PLATA COUNTY.

1. COUNTY—GARNISHMENT.
Counties are *quasi* and not municipal corporations, and are not liable to garnishment.

2. STATUTORY CONSTRUCTION—RULE.
In the construction of statutes the intention of the legislature is to be ascertained by considering together all acts in *pari materia*, whether they are acts in force or acts which have been repealed.

3. COUNTY CLERK—APPEARANCE BY COUNTY.

The county clerk has no authority to enter the appearance of the county in any legal proceeding, and his answer for the county in garnishment proceedings does not constitute an appearance by it nor waiver of its exemption from garnishment.

4. COUNTY ATTORNEY.

The statute provides for the appointment of a county attorney, who, when appointed, is the proper representative of the county in legal proceedings to which it is a party, and is authorized to appear for it in its litigation.

*Error to the District Court of La Plata County.*

Messrs. MILLER & REESE, for plaintiff in error.

Messrs. GALBREATH & SEARCY, for defendant in error.

THOMSON, J., delivered the opinion of the court.

Barth Brothers brought suit in La Plata county against M. R. Shields for goods sold and delivered. A writ of attachment was issued in the cause, and the board of commissioners of La Plata county summoned as garnishee. During the pendency of the suit the cause of action was assigned to the plaintiff in error, and he substituted in place of the original plaintiffs. Judgment was given against Shields, and the cause went by appeal to the district court of the same county, where judgment was again rendered against him. In the district court the defendant in error appeared, and moved to dismiss the garnishment proceedings against it on the ground, among others, that proceedings in garnishment cannot be had against a county. The motion was sustained, and final judgment rendered in favor of the garnishee, from which the plaintiff has prosecuted error.

Several questions are discussed by counsel, but the only one which we deem it necessary to consider is whether, in this state, a county is subject to garnishment. The reports contain a large number of cases in which the question of the liability of counties and municipal corporations to garnishment has been decided; but there is such a disagreement

among them, even where the statutes construed were similar, that we are unable to make any use of them in this discussion. Besides, the conclusions reached in each case are drawn from local statutes, and in none of them was the condition of the statutory law affecting the question the same as in this state.

Section 119 of the code of 1887 provides for process in garnishment as follows: " Whenever in any action pending in any court of record, a writ of attachment has been issued and delivered to the proper officer, and the officer after diligent search shall not be able to find property of the defendant sufficient to satisfy the claim of plaintiff, the officer shall upon the request of plaintiff, his agent or attorney, summon such person or persons as the plaintiff may direct as garnishees to appear before the court wherein such action is pending." Section 442 contains this provision : " In the construction of this act the following rules shall be observed when consistent with the context. * * * The word ' person' extends to bodies politic and corporate." The following has always been a part of our statutory law: " Each organized county * * * shall be a body corporate and politic, and as such shall be empowered for the following purposes: First, to sue and be sued. * * * " Rev. Stats., 1868, p. 167 ; Gen. Stats., 1883, p. 254. An argument of counsel, based upon these several statutes is, that as any person is subject to garnishment, and as the word " person " extends to bodies corporate and politic, and as counties are bodies corporate and politic, therefore counties are subject to garnishment. Upon its face, this argument seems plausible ; but, for reasons which we shall proceed to give, we must withhold our assent from the conclusion reached.

The attachment law in force in 1868 provided as follows : " SEC. 12. When the sheriff shall be unable to find property of any defendant, sufficient to satisfy any attachment issued under the provisions of this chapter, he is hereby required to summon all persons within his county, who may be named in the writ, or whom the creditor shall designate as having

any property, effects or choses in action, in their possession or power belonging to the defendant, or who are in anywise indebted to such defendant, to appear before the court to which the writ is returnable, on the return day of the attachment, then and there to answer, upon oath, what amount they are indebted to the defendant in the attachment, or what property, effects or choses in action he or she had in his or her possession or power, at the time of serving the attachment; the person or persons so summoned shall be considered as garnishees, and the sheriff shall state in his return the names of all persons so summoned, and the date of service on each." Rev. Stats., 1868, p. 57. At the same time the following statute was in force: "SEC. 1. In the construction of all statutes, the following rules shall be observed, unless such construction shall be manifestly inconsistent with the intent of the legislature, or repugnant to the context of the same statute, that is to say: * * * Eighth. The word 'person' may extend and be applied to bodies politic and corporate. * * *" Rev. Stats., 1868, p. 588. The statutory law, in 1868, affecting the question under discussion, was therefore substantially the same as under the code of 1887; and if the counsel's reasoning, as applied to that code, is sound, it would be equally so as applied to the law of 1868. But in the case of *Commissioners v. Bond*, 3 Colo. 411, which was decided while the law of 1868 was in force, it was held that counties were not subject to garnishment under that law. A change was introduced into the then existing law by the code of 1877, which provided as follows: "SEC. 101. Upon receiving information in writing from the plaintiff or his attorney, that any person has in his possession, or under his control any credits or other personal property belonging to the defendant, or is owing any debt to the defendant, the sheriff shall serve upon such person a copy of the writ, and a notice that such credits or other property or debts, as the case may be, are attached in pursuance of such writ, *and every municipal or other corporation or quasi corporation,* sheriff or other officer or trustee shall be liable to garnish-

ment under the provisions of this chapter." It has never
been questioned that, by virtue of this section, counties were
liable to the process of garnishment. But it was also pro-
vided, by section 445 of the same code, that the word "per-
son," as used in the act, should extend to bodies politic and
corporate; and counties were then, as they had been before,
and now are, bodies corporate and politic. The fact that,
after providing for the garnishment of persons, the legislature
deemed it necessary, in order that municipal and *quasi* cor-
porations should also be liable to the process, to mention
them specially by name, is certainly some evidence that the
legislature did not regard the word "person" as extending
to them, and that the words "bodies politic and corporate,"
as used in the act, were not intended to refer to that class of
corporations. This may not be entirely conclusive of the
question, but we think that all doubt which might otherwise
exist as to the legislative intent is removed by the act of
April 10, 1891. That act is as follows: "SEC. 1. That all
municipal corporations shall be subject to garnishment upon
writs of attachment and execution in the same manner that
private corporations and persons are now, or may hereafter
be, subject to garnishment under such writs." Sess. Laws,
1891, p. 234. The code of 1877 had been supplanted by that
of 1887, which is the present code, and which provided for
the garnishment of persons only. The statute of 1891 ex-
tended the liability in garnishment to municipal corpora-
tions; thus clearly indicating that the legislature did not
regard municipal corporations as subject to garnishment
under the code of 1887, and that the word "person," as there
used, did not include them. It is further apparent from that
act that the legislature regarded the words "bodies corporate
and politic," used in the code, as applicable only to private
corporations. The object to be attained in the construction
of any statute is the intention of the legislative body which
enacted it. For the purpose of finding such intention, all
acts *in pari materia* must be considered together, whether
they are acts in force, or acts which have been repealed;

and, pursuing this method of interpretation, we are led to the conclusion that garnishment of municipal and *quasi* corporations was not authorized by the code of 1887.

But here we are met by the contention put forward by counsel, that the term "municipal corporations" includes counties, and that, therefore, by the express terms of the act of 1891, counties are subject to garnishment. There has sometimes been a loose and indiscriminate use of that term in speaking of cities, towns, and counties, in cases where it was not disputed that some particular law which was the subject of construction applied equally to all of them; and, in determining the sense in which the term is employed in the act of 1891, cases where it is loosely used, or even misapplied, the facts not calling for critical accuracy in that respect, are of no assistance whatever. We are referred to sections 7 and 8 of article 10 of the constitution, where the words "county, city, town or other municipal corporation" are used; but the word "other" does not necessarily refer back to the word "county." No violence would be done to the language employed, if the word should be confined, in its reference, to the words "cities" and "towns;" and, if it is important to know what meaning the makers of the constitution attached to the words "municipal corporations," as used in that instrument, an examination of section 13, art. 14, will, we think, be satisfactory. It seems clear, from that section, that the words were intended to be limited, in their application, to cities and towns. But it is the legislative meaning of the words which it is important to know, and, to ascertain that, we must avail ourselves of the usual means employed in the construction of statutes. Counties are classified by all writers upon the subject as "*quasi* corporations," in contradistinction to "municipal corporations." The distinction between these two classes of public corporations is very clearly drawn by Mr. Dillon in section 23 of his work on Municipal Corporations, and we think a careful examination of the attachment and garnishment laws which have been enacted in this state will make it apparent that the leg-

islature did not intend to confound them. In the absence of anything indicating a contrary intention, it must be presumed that terms employed in a legislative enactment are used according to the definition placed upon them by the standard authorities. Mr. Dillon says that a municipal corporation, in its strict and proper sense, is a body politic and corporate, constituted by the incorporation of the inhabitants of a city or town for the purposes of local government thereof. 1 Dill. Mun. Corp., secs. 19, 22. There is nothing in the act of 1891 itself from which it could be inferred that the words "municipal corporations" were intended to have any other than their generally accepted meaning; but, when we refer back to the prior legislation upon the same subject-matter, it becomes clear that in using the words the legislature had in contemplation only cities and incorporated towns. In the code of 1877, from which we have quoted, municipal corporations and *quasi* corporations are separately mentioned, in such way as to clearly indicate that they were intended to designate different classes of public corporations. If the two were equally "municipal corporations," that term alone should have been employed, as including both; but the fact that, in order to render *quasi* corporations subject to garnishment, it was deemed necessary to specify them as such, thus distinguishing between them and municipal corporations proper, makes it entirely evident that *quasi* corporations were not intended to be included in the term "municipal corporations." The code of 1887, in providing for liability to process in garnishment, omitted municipal and *quasi* corporations, and restricted the liability to persons; restoring the law of 1868, under which neither municipal corporations nor counties were subject to garnishment. Then came the law of 1891, which reënacted the code provisions of 1877 as to municipal corporations, but still omitted *quasi* corporations. As, under that code, it was deemed necessary, for the purpose of subjecting *quasi* corporations to garnishment, to give them mention distinct from municipal corporations, the fact of their omission from the act of 1891 is conclusive that

it was not intended to restore their liability. It is therefore our opinion that, in the present state of the law, counties are not subject to garnishment.

There was no waiver of the county's exemption from garnishment. The county clerk answered the interrogatories accompanying the writ, but in so doing he acted in the character of a witness, merely, and did not represent the county. The county's first appearance was by the county attorney, when he moved to dismiss the proceedings in garnishment. *Commissioners v. Bond, supra.* The judgment was correct, and will be affirmed.                             *Affirmed.*

### ON PETITION FOR REHEARING.

THOMSON, J., delivered the opinion of the court.

A petition for rehearing has been filed in this case, supported by a brief of counsel representing the defendant in error, and also by a brief of counsel appearing in another case pending in this court, the fate of which is dependent upon the final decision in this case ; and, in view of the importance of some of the questions involved, we deem it advisable to devote a little more time and space to them than we did originally. It is urged that we were in error in holding— *First,* that the word " person," in section 119 of the code of 1887, does not include counties ; *second,* that counties are not municipal corporations ; *third,* that counties are *quasi* corporations ; and, *fourth,* that there was no waiver of the county's exemption from garnishment.

In regard to the first proposition, we deem it unnecessary to add anything to our former opinion. The decision in *City of Denver v. Brown,* 11 Colo. 337, to which we have been referred, is in entire accord with the previous ruling of the supreme court upon the question, and with the views expressed by us. But we think that a little more attention may profitably be given to the remaining propositions. .

. It is argued that, where the words " *quasi* corporations " are applied by the authorities to counties, reference is had to counties as they existed at common law, and not to counties

which are expressly declared by statute to be corporations, "because," say counsel, "no organization can be, or can properly be called, a 'quasi corporation,' which is expressly declared by law to be a corporation." We do not attach the importance to the express statutory declaration which it seems to have in the minds of counsel, because, if an organization or body of persons is clothed by law with the attributes of a corporation, it is a corporation as fully, for all the purposes of its creation, as if it is expressly declared to be such. The formal declaration adds nothing to its completeness or its powers. Ang. & A. Corp., sec. 77; *Dean v. Davis*, 51 Cal. 406. The effect, therefore, of counsel's argument, if we understand it, is that an organization or association which may be properly termed a "*quasi* corporation" is not a corporation at all, and that the moment it becomes a corporation it ceases to be a *quasi* corporation. Our disagreement with counsel upon this proposition is radical. A *quasi* corporation is an organization or body invested with certain limited corporate powers. It does not possess the general powers of corporations, but, within its own subordinate and inferior sphere, it is a corporation, with duties which may be enforced and rights which may be maintained in like manner and with the same effect as in the case of corporations with general powers. *Commissioners v. Mighels*, 7 Ohio St. 109; *Inhabitants of School Dist. v. Wood*, 13 Mass. 192; *Clarissey v. Fire Department*, 1 Sweeney, 224; Bouv. Law Dict., title "Quasi Corporations." It is the constitution of the body, the purpose for which it is organized, the extent of its powers, and the manner in which they are exercised, rather than the particular statutory language employed in its creation, which determine its character as a corporation or a *quasi* corporation; and a mere statutory declaration that it is a body corporate and politic does not change its inherent character. The distinction between municipal corporations proper and counties is precisely that which exists between corporations with general powers and *quasi* corporations. It is true that a municipal corporation owes its existence to the laws of the

state, that its mode of existence and its powers are prescribed by statute, and that, in a qualified sense, it is an agent of the state, in its government; but its primary purpose is the administration of its own internal affairs.  It is a community invested with peculiar functions for the benefit of its own citizens.  It possesses a local government of its own, with executive, legislative, and judicial branches.  It can enact and enforce ordinances, having the force of laws, for the regulation of its domestic concerns and the preservation of its peace.  For injuries occasioned by the neglect or wrongful acts of its agents or servants in the construction of its local improvements, or by its own neglect in keeping them in repair, its liability is the same as that of a private corporation or a natural person.  It can provide for the supply of water and light to its inhabitants, and own and operate works necessary for such purposes; thus taking upon itself the duties, and assuming the liabilities, of a private corporation. Within the boundaries of its granted powers, it is independent.   The character of a municipality, with its accompanying duties and burdens, is assumed voluntarily.   There can be no municipal organization without the consent of the inhabitants of the territory which it is to embrace, and the municipality, when organized, is what Mr. Beach terms a " full-fledged " corporation.   1 Beach, Pub. Corp., secs. 3, 5 ; *Park Com'rs v. Detroit Common Council*, 28 Mich. 228 ; *Woods v. Colfax Co.*, 10 Neb. 552 ; *City of Denver v. Dunsmore*, 7 Colo. 328.   The difference between this class of corporations and counties is fundamental and evident.   A county is created by the legislature without reference to the will of its inhabitants.   It has no power of local government, or independent authority of any kind whatever.   It officers, although elected by its people, are virtually officers of the state, and are charged with the administration and execution of the laws of the state.   It is merely a subdivision of the state for the purposes of state government.   It is nothing more than an agency of the state in the general administration of the state policy, and, unless an action is given by statute, none lies against it.

*Commissioners v. Mighels, supra; Woods v. Colfax Co., supra; Commissioners v. Churning*, 4 Colo. App. 321; *Hedges v. Madison Co.*, 1 Gilman, 567. In Nebraska, counties are bodies corporate and politic, as they are with us. See Gen. Stats. Neb., 1873, p. 231. But in *Woods v. Colfax Co., supra*, the supreme court of that state held that a county was not a municipal corporation, citing with approval the case of *Riddle v. Proprietors*, 7 Mass. 169, in which counties are designated as "*quasi* corporations." In Illinois, also, counties were, by statute, constituted bodies corporate and politic; but in *Hedges v. Madison Co., supra*, they are denominated "*quasi* corporations." See, also, *Donalson v. San Miguel Co.*, 1 N. M. 263. There are numbers of other cases in which counties, invested with the same corporate powers, duties and liabilities as in this state, although not in terms declared by statute to be corporations, are classed as *quasi* corporations. The question has never been directly passed upon in this state, but in *County Court v. Schwarz*, 13 Colo. 291, the court incidentally say that the phrase "municipal corporations," as employed generally in our constitution and statutes, means "cities and incorporated towns," and in *City of Denver v. Dunsmore, supra*, the court applies the term "*quasi* corporations" to counties, seemingly as a matter of course. Our investigation of the question in the first opinion was directed not so much to an abstract definition of terms as to an ascertainment of the meaning attached to them by the legislature. In providing for the liability to garnishment of different classes of corporations, it evidently regarded *quasi* corporations as outside of municipal corporations; and unless, by the term, such corporations as counties were meant, there are no corporations in this state to which the name "*quasi* corporations" can be applied. We assumed that the terms "municipal corporations" and "*quasi* corporations" were used in the sense which is ordinarily given to them, and we see no reason to change the opinion then expressed.

It was held in *Commissioners v. Bond*, 3 Colo. 411, that a county's exemption from garnishment might be waived by

appearance and submission to liability. In this case the answer to the interrogatories was made by the county clerk. He afterwards filed a supplemental answer, which the plaintiffs moved to strike from the files. The record recites that, upon the hearing of the motion, W. A. Reese appeared for the motion, and T. J. Jackson, *contra*. Afterwards, the county appeared in the case by O. S. Galbreath, the county attorney, and moved the court to dismiss the proceedings because the county was not liable to garnishment. The duties of the county clerk are defined and prescribed by the statute. No authority is given him to enter the appearance of the county in any legal proceeding, and the filing by him of the answer and supplemental answer did not constitute an appearance by the county in the case. It appears that the motion to strike out the supplemental answer was resisted by T. J. Jackson. Who T. J. Jackson was, or in what capacity he purported to act, the record does not disclose, but there is nothing to indicate that he was in any way authorized to represent the county. The statute provides for the appointment by the commissioners of a county attorney. This attorney, when appointed, is the proper representative of the county in legal proceedings to which it is a party, and is authorized to appear for it in its litigation. The record shows no appearance for the county by any person with authority to bind it, until the filing of the motion to dismiss by the county attorney. That appearance was not in submission to, but in denial of, liability. We find no waiver by the county of its exemption from garnishment. For the foregoing reasons, our first decision will be adhered to.

*Rehearing denied.*